**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO:**

**KEVIN CUELLER,**
individually and on behalf of all
others similarly situated,

Plaintiff,

**CLASS ACTION**

**JURY TRIAL DEMANDED**

v.

**ANATOMY MANAGEMENT, LLC,**

Defendant.
_______________________________________/

## CLASS ACTION COMPLAINT

Plaintiff Kevin Cueller brings this class action against Defendant Anatomy Management LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action brought under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 and Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA").

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life

of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA") and supplemental jurisdiction over the FTSA claims.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District like Plaintiff.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and resident of Miami-Dade County, Florida.

7. Defendant is a Florida corporation.

## FACTS

8. Defendant caused multiple text messages to be transmitted to Plaintiff's cellular telephone number ending in 5332 ("5332 Number") after Plaintiff opted out of Defendant's solicitations as depicted below:







9. Plaintiff asked Defendant to stop contacting him on June 11, 2026 but Defendant continued to send him text messages on June 18, 2026 and June 30, 2026.

10. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services namely a gym membership.

11. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

12. Defendant sent at least two solicitations after Plaintiff's initial opt-out request. One of which was more than fifteen (15) days after Plaintiff asked Defendant to stop.

13. Plaintiff is the regular user of the telephone number that received the above telephonic calls.

14. Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

15. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

16. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

17. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

18. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

19. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

20. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

21. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

22. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

23. Compliance with the FTSA will not result in Defendant having to cease its business operations.

24. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

25. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

26. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

27. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

28. Defendant's failure to honor opt-out requests demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

29. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

30. Plaintiff and the Class Members revoked any consent they may have previously provided to Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

31. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

32. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

33. Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

34. Plaintiff alleges Defendant's violations were willful or knowing because Defendant allegedly continued sending promotional texts after STOP requests and unsubscribe confirmations.

## CLASS ALLEGATIONS

### PROPOSED CLASS

35. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

36. Plaintiff brings this case on behalf of the Classes defined as follows:

> **FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **FTSA Autodialer Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **INTERNAL DO NOT CALL CLASS: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's goods, products or services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive future text messages.**

37. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

38. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

39. Plaintiff reasonably believes that the Class numbers in the hundreds or thousands of persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

41. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a. Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;
b. Whether Defendant continued to send text message solicitations after opt-out requests;
c. Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and
d. Whether Defendant is liable for damages, and the amount of such damages.

42. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

43. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

44. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

45. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

46. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059(5)**
**(On Behalf of FTSA "STOP" Class)**

47. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

49. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

50. Defendant is a telephone solicitor as defined under the FTSA.

51. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

52. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

53. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

54. Defendant failed to honor Plaintiff and the Class members' opt-out requests.

55. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

56. Defendant willfully or knowingly violated the FTSA by continuing to text message Plaintiff and the Class members after they asked Defendant to "stop" its solicitations.

57. Accordingly, pursuant to § 501.059(10)(b), Plaintiff, on behalf of himself and the Class members, seeks $1,500 in damages for each willful and knowing violation of the FTSA.

58. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of FTSA Autodialer Class)**

59. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

60. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

61. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

62. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

63. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

64. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

65. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

66. Defendant willfully or knowingly violated the FTSA by continuing to text message Plaintiff and the Class members after they asked Defendant to "stop" its solicitations.

67. Accordingly, pursuant to § 501.059(10)(b), Plaintiff, on behalf of himself and the Class members, seeks $1,500 in damages for each willful and knowing violation of the FTSA.

68. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

69. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

70. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

71. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

72. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

73. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members opt-out requests.

74. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

75. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

76. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

77. As a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

78. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and TCPA;

c) An award of statutory treble damages for Plaintiff and each member of the Classes as applicable under the FTSA and TCPA;

d) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: 11.18.2026

Respectfully Submitted,

**EISENBAND LAW P.A.**
By: */s/ Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.732.2792
Attorney for Plaintiff

By: */s/ Manuel Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
246 Shore Court
Lauderdale-by-the-Sea, FL 33308
Email: mhiraldo@hiraldolaw.com
Telephone: 305.336.7466
**LEAD COUNSEL**